## THE PEOPLE *v.* BENJAMIN COLE.

Character is important in a criminal case where it is doubtful, upon the evidence, whether the prisoner committed the act, and where a jury have a right to weigh the probabilities; its bearing is more remote where the act is clearly proved, and where the question is, with what intention and at what suggestions the act was done.

To justify the taking of life in *self-defence*, it is necessary that the prisoner himself should have been attacked; that he should have had reasonable ground to suppose that the object of the attack was to kill him or to do him great bodily harm; that he should have been unable to withdraw himself from such imminent danger, and therefore should have been compelled to kill his assailant to protect himself against his attack.

A person is not responsible for a mistake which he makes in self-defence, in supposing a deadly design which does not exist. But he must be actually assailed, and he must show reasonable ground for supposing that his only recourse was to kill his assailant.

To a certain extent a person must be his own judge in such a case; but if he act honestly and upon reasonable ground, he will not be held accountable for a mistake made under such excitement, and in great apparent personal danger to himself.

Where the prisoner justifies on the ground that the act was committed "necessarily in lawfully keeping and preserving the peace," as where he interferes to prevent A.'s taking the life of B., and to that end kills A., he must show, to establish a defence, not that he had reasonable ground to believe the act necessary, but that it was actually necessary, and that he had no other way to prevent the commission of a felony.

In a case of a mere affray or beating with fists, it cannot be necessary for a third person to resort to firearms, or take life in any case, for the purpose of protecting one combatant from being injured by the other.

If life be unnecessarily taken by a third person interfering between two combatants, for the purpose of preserving the peace, in protecting one against the other, the offence is manslaughter.

THE prisoner was tried on an indictment for the murder of Aaron Cole. The defence was, that the homicide was justifi-

able.   The facts are sufficiently set forth in the charge of the judge to present the questions of law decided.

*S. Wodell* (District Attorney) and *H. Hogeboom*, for the People.

*A. Wager* and *J. F. Barnard*, for the prisoner.

EMOTT, Presiding Judge.   After some remarks upon the importance of the cause, and the relative duties of the court and jury in such cases, the judge proceeded as follows:

This indictment is for the killing of Aaron Cole by the prisoner, Benjamin Cole, by shooting him with a gun, on the 7th day of June last, and it is charged by the prosecution to have been done willfully, and with premeditation.   The taking of the life of Aaron Cole by the prisoner, as also the killing of Chas. Salpaugh, at the same time, by the discharge of the other barrel of the gun, is proved, and indeed admitted, and the only questions for you are, under what circumstances, and with what design, the prisoner destroyed the life of Aaron Cole.   The circumstances attending the death of Salpaugh are only important as affecting these questions.   So also the quarrels between these parties of fishermen, the interference of one party with the nets of the other, and any invasion or threatened invasion of such property, can have no other bearing. No such quarrels, threats or invasions of property can justify or excuse the taking of life, and you must remove all these facts from your consideration, except so far as they go to show the intention of the prisoner, or characterize the acts of the deceased, and thus to justify or mitigate the homicide, which they do but remotely, if at all.

The character of the prisoner has been proven to have been good.   He is spoken of as a quiet and peaceable man.   Character is important in a case where it is doubtful upon the evidence whether the prisoner committed the act, and where the jury have a right to weigh probabilities.   As this case stands, although we did not feel justified in excluding the evidence,

The People *v.* Cole.

its bearing is more remote, and the fact of the prisoner's pre-
vious good character can only aid you in deciding with what
intention and at what suggestions he fired the fatal shot, if it
can aid you at all.

The defence assert that this act is justified by the facts proved
in the case, and the first question for you will be whether it
is so.

So it is said that the prisoner was justified in killing Aaron
Cole in *self*-defence.  The right of self-defence is a right
which is inherent in man; it is the instinct of our nature
to assert it when we are in peril, and it would be in vain
for human laws to attempt to oppose its exercise.  Our
law recognizes and defines it.  To justify the prisoner in kill-
ing Aaron Cole in *self*-defence, it is necesssary that the pri-
soner himself should have been attacked—that he should have
reasonable ground to suppose that the object of the attack was
to kill him, or to do him great bodily harm; that he should
have been unable to withdraw himself from this imminent
danger, and therefore should have been compelled to kill
Aaron Cole to protect himself from the attack.

You will now recur to the facts, some of which are undis-
puted, and upon some of which there is a conflict of evidence.
It will not probably be necessary for you to go further back in
the history of this transaction than to the approach of the boat
of Cole and Salpaugh to Kipp.  The alleged threats against
Kipp are of no importance in this part of the case.

It would seem that when Salpaugh and Aaron Cole came up,
having been informed of Kipp's threatening and brandishing
his gun, they rowed up to his boat.  One, or both—it is dis-
puted which—struck with oars, either at Kipp or at his gun, or
first at the gun and then at him.  Kipp and other witnesses for
the defence swear that he was knocked down with the oar; he
says he was stunned.  There were undoubtedly outcries and
threats of some kind; Salpaugh and Aaron Cole sprang into
Kipp's boat, and attacked, and probably beat him with their fists;
and some of the witnesses for the defence say they dragged him to
the side of the boat as if to plunge him in the river.  It is also said

that the prisoner called to Cole and Salpaugh to desist. Whether they were engaged in this attack upon Kipp, or were leaving the boat when the shots were fired, is disputed; and this point it will be important for you to determine in this and also in another part of the case. It is also disputed, and it is also important for you to ascertain, how far the prisoner was from these parties, that you may determine whether he was in instant danger from these men, and to what extent he was surrounded so as to prevent his escaping if he were in danger. The witnesses are in conflict upon this question, and you must decide which is the correct account of the transaction. You have evidence of the character and appearance of the wounds inflicted upon Salpaugh and Cole, and the extent to which the shot scattered; and this may assist you in ascertaining how far they must have been from the muzzle of the gun when it was discharged.

*But the question for you is whether the prisoner was attacked by Aaron Cole, and, unable to escape, was in imminent danger from his attack, so that he was driven to take his life to save his own.* Mere threats of what would be done after the design upon another was effected, are not enough. Mere apprehension of danger is not enough. There must be an attack by the person killed upon the prisoner, and imminent instant danger. It is true that a man will not be responsible for a mistake which he makes in self-defence, in supposing a deadly design which does not exist. But he must be actually assailed, and he must show reasonable ground for supposing that his only recourse is to kill his assailant.

1. It is for you to say whether the facts of this case sustain such a belief. If you come to that conclusion you will acquit the prisoner.

2. If you are not convinced that such a necessity, real or reasonably apparent, existed for the prisoner to take the life of Aaron Cole, then you must inquire if the act can otherwise be justified.

It is claimed to be justified as necessary and lawful for the protection of Kipp. This depends upon a different clause of

the statute, and upon different principles.   At the common
law, if A. was attacked by B., and was in urgent and immedi-
ate peril of his life, and C. interposed to preserve the peace, or
even to aid A., and it was *actually necessary* to kill B. to ter-
minate the affray and save the life of A., a third party would
be excused for killing him.   This principle is preserved in the
statute.

Homicide is justifiable when committed "*necessarily in law-
fully keeping and preserving the peace.*"   You will observe that
the language of this section is very different from that of the
former.   In the section or clause justifying *self*-defence, all that
is required is that the jury should see that the man had rea-
sonable ground for believing himself in instant peril.   To a
certain extent a man must be his own judge in such a case,
and if he acts honestly and upon reasonable ground, he will
not be held accountable for a mistake made under such excite-
ment and in great apparent personal danger to himself.

But where a man interposes when another is attacked, it
must be to keep the peace, and the protection of another must
be incidental to this.

And if he killed another under such circumstances, it must
be shown that it *was actually necessary for him to do so, not that
he had reasonable ground for believing it necessary, but that there
was really no other way to prevent the commission of a felony.*

The aspect in which this principle is said to be applicable to
the present issue, is that the killing of these two men was
necessary to prevent them from taking the life of Kipp.   It is
said that this is a dangerous defence to be allowed, and there
is force in the remark.   The principle of the proposed defence,
however, is true and right; it has always been a maxim of the
common law, and we cannot believe that it has been design-
edly omitted from our statute book.   If one of you were to be
passing in our streets, and see an assassin with the knife or the
pistol at the breast of another, it cannot be that the law would
hold you guilty for even the homicide of the assailant, if
necessarily committed to arrest his act.   But there is danger
in the application of the principle to cases, and juries must be

on their guard and be sure that a case comes clearly and beyond all doubt within the rule before they apply it.

It cannot be said that to keep the peace in a mere affray, a fist fight, it can be necessary to resort to firearms or to take life in any case. It would not be justifiable for a person assailed with the mere naked fists to use deadly weapons himself, much less can a third person excuse such an act.

You must therefore be satisfied in the present instance, in the first place, that Salpaugh and Aaron Cole designed and were attacking Kipp to kill him, to drown him, or to take his life in some other way, or to maim him. If the actual purpose of these men was, in your opinion, only to beat Kipp with their fists—to have a fight or an affray—it could not have been necessary, and it cannot be justifiable for the prisoner to use firearms.

It is contended that the proof shows an actual intention by these men to take Kipp's life, either (1) with his gun, which they were proceeding to take away from him, or (2) by drowning him. The testimony relied upon to show this, consists of the threats sworn to, and the alleged dragging Kipp to the side of his boat to throw him over. On the other hand, it is said that the only design upon the gun was to make it go off by striking it, and thus render it harmless to these men themselves; and the purpose in getting into Kipp's boat was merely to have a fight.

This is a question for you. If you think that nothing more than a beating with fists was designed and perpetrated, or about to be inflicted on Kipp, then this justification fails. If, however, you are satisfied that the design and attempt was to put him overboard or kill him, then you will have to inquire in the second place whether it was actually necessary in point of fact for the prisoner to kill these men—to kill Aaron Cole, as he did, to prevent the death of Kipp. In this inquiry it will become important for you to determine the relative position and distance apart of these parties at the time of the shot. It is said by the prosecution, that when these shots were fired these men had left Kipp, and were leaving his boat; and that

The People *v.* Cole.

this is shown by the place and manner in which the shot entered their bodies.   The witnesses disagree as to the distance apart, the position of other boats, and the number surrounding Kipp and the prisoner.   If this affair had occurred on land, where actual manual interference could have been resorted to, it is not easy to see how any necessity for the use of firearms could have arisen.   The fact that the parties were upon the water in boats is undoubtedly to be considered.

It is for you to say how controlling an element this circumstance shall become.   You must be satisfied that it was actually necessary, to prevent the commission of a homicide of Kipp, at the time the shots were fired, for the prisoner to kill Aaron Cole, in order to sustain this defence.   If you think so, you will acquit the prisoner.   But if this act was not necessary, clearly and strictly necessary, you will be unable to acquit the prisoner.   He has then taken human life without necessity, and therefore without justification, and he is morally and legally guilty of a crime, a high crime, and you must say so, and say what the crime is.   This will depend upon his design in the act.

1. You may perhaps regard this affair as a fight or affray between these parties of fishermen.   If you come to the conclusion that the prisoner interfered merely designing to take the part of Kipp and to fight the party of Peter Cole; that he acted in the heat of passion, and did not design to kill Cole when he discharged his gun, you may find him guilty of manslaughter in the third degree.   In considering such a view of the case, it will again be important for you to consider the distance apart and relative positions of the parties.   The difficulty in the way of such a view of the case, is the deliberate use of a deadly weapon by the prisoner, and a weapon provided and prepared beforehand, as is claimed by the People. This clause of the statute was intended and is usually applied to deaths caused by stabbing or the like in the heat of a fight.

2. If the design of the prisoner in discharging his gun was to prevent the commission of a crime upon Kipp; if the shooting was in the mere resistance of the attempt, and with that

purpose only, but in making this interference or resistance, the prisoner *unnecessarily* killed Aaron Cole, you may find him guilty of manslaughter in the second degree.

As I have already observed in reference to an absolute justification of such an act, it would be difficult to apply this section of the statute to the deliberate shooting of a man upon the land without actual necessity, when manual interference might have been resorted to, and where no firearms were used by the assailants of the party attacked. The fact that these parties were on the water in boats at a distance from each other, may make a difference. It is for you to say whether this fact is sufficient to show that in discharging his gun the prisoner intended to interfere and prevent the murder of Kipp, and intended nothing else, and thus discharged his gun as he would have struck a blow had he been at hand.

If you are convinced of this, then, if it was really *unnecessary* for him to use firearms, his responsibility for the act will be for an act of manslaughter, as if he had used undue violence or harsh weapons unnecessarily in a case where he was at hand. But to make the killing manslaughter of this grade, it must have been done simply in resistance of the attempt to kill Kipp, and not with the design to kill Cole.

3. If you cannot bring this homicide within either of these definitions; if it was neither done in self-defence, nor necessarily to prevent the killing of Kipp; nor without a design to take the life of Cole in the heat of passion in an affray; nor with the mere purpose of protecting Kipp, but without any actual necessity, then it was a willful murder. And if it is not justified, and was done with the formed and deliberate purpose to take life, it is murder. It is not necessary that the purpose should have been formed days or hours or minutes before the act. It may have been adopted just before the shooting of the gun. If the prisoner discharged his gun simply intending to kill Cole, and under circumstances which will not justify the act, he is guilty of murder, and it will be your duty to say so. A stern and a painful duty it may be, but one from which you cannot escape, and must not shrink. You are bound to look

The People *v.* Cole.

at all the circumstances attending the act in deciding this final issue. On the one hand, it is said that the prisoner did not discharge his gun until appealed to by Kipp, nor until he had called on the others to desist, and that he discharged the gun twice almost without a pause. On the other hand, it is urged, and you cannot help considering it, that he came there with a deadly weapon in an unusual way, and that weapon heavily loaded.

These, gentlemen, are the issues in this case, and to the consideration and trial of these you have now for these three days been secluded from your ordinary occupations and from intercourse with the world outside.

It is an old and a wholesome rule of law that this should be so in capital cases. It is sometimes relaxed: but the court have not felt at liberty to relax its strictness in the case before us. There is an evident interest felt in this cause by the community around us. No doubt there is a similar interest elsewhere, where the cause and the parties are known. There is a public opinion here, how formed, or for whom, should be wholly immaterial to us; but which has endeavored to make itself manifest even within these walls. The object of separating you from all ordinary intercourse, is not only that you may give your whole minds and deliberate and intelligent thought to so momentous a trial, but that you should be kept from knowing or feeling what the sentiment of the public, or any part of it, is. Your duty here is the most solemn, the most important you can be called upon to discharge. You have been kept here at much inconvenience, I know, and it may be at more or less actual loss to some of you to perform it. Your only recompense for your labor and your loss will be the consciousness hereafter that you have discharged it aright; not to the satisfaction of any man or men of the community about you, or of any part of it, but so as to answer the dictates of your consciences and the obligations of your oaths. God forbid that either you or I should ever take a part in depriving an innocent man of his liberty or his life. None of us need to be admonished to be careful for this. The feeling of

mercy, the disposition to forget the past, the guilty act and its consequences, and to think only of the present and the future, with the unhappy man before us, is so strong that we are all of us liable, consciously or unconsciously, to be swerved to the side of mercy when we administer justice.

The law directs you to give the prisoner the benefit of every reasonable doubt of his guilt. And I cannot but feel for myself that I have in this case given this man the benefit of the most merciful construction of the statutes I have read. But we must not forget that mercy is not your prerogative nor mine. We can only recommend its exercise. We must shut our eyes to everything but the law and the testimony. This duty must fall somewhere, stern and painful though it may be. It has fallen now upon me and upon you. I am bound to expound to you the law as it is; you must apply it to the facts as they are. We have to deal with justice, and not mercy; to act on the truth, and not by our sympathies. It is unnecessary to remind you of the awful interests which this case involves to the prisoner, or to exhort you not to do more than your oaths and your consciences demand to punish this man. But the life or death of the prisoner is not all that is involved here. The protection and security of life, the most vital interests of society, require of you that you should not, for fear, or favor, or affection, or sympathy, do less than the law and the testimony put before you. If juries will depart from the paths of their duty to render verdicts which are dictated by other considerations, such verdicts will surely return, if not in their day, in that of their children, to punish their authors; -it may be in their dearest concerns.

I commit this cause to your deliberate, intelligent and conscientious judgment, and may God Almighty guide you to the truth.

The jury found a verdict of "not guilty."